Pernot Corporation, formerly Pernot and Rich, Inc., a California corporation v. Commissioner.
Pernot Corp. v. Commissioner
Docket No. 15179.
United States Tax Court
1949 Tax Ct. Memo LEXIS 109; 8 T.C.M. (CCH) 722; T.C.M. (RIA) 49203; August 16, 1949
*109 In 1939 petitioner corporation made an assignment for the benefit of creditors. The business was operated by the assignee until October, 1939, when he decided to cease operations and liquidate. Pernot and Rich, owners of 97 per cent of petitioner's stock, were also its principal creditors. They offered to and did purchase from the assignee all of petitioner's assets except the real estate (which they had acquired in August, 1939) for a payment sufficient to cover the expenses of the receivership and a 33 1/3 per cent dividend on the accounts due to "trade creditors." Thereupon Pernot and Rich, as partners, operated the business, sold inventory to petitioner at cost and made appropriate entries in their books relating to all business transactions. Petitioner thus derived the profit from sales. Held, that the partnership was a separate entity, was not acting as agent or trustee of petitioner, was conducting its own business and therefore petitioner is not entitled to deduct operating losses suffered by the partnership during the fiscal years ending October 31, 1943 and October 31, 1944. Wareham C. Seaman, Esq., for the petitioner. Robert H. Kinderman, Esq., for the respondent. *110 VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $6,458.57 and $48.25 in the petitioner's excess profits tax and declared value excess profits tax, respectively, for the fiscal year ending October 31, 1944. The single issue is whether or not the petitioner is entitled to deduct from its gross income for the fiscal years ending October 31, 1943 and October 31, 1944, amounts representing operating losses of a partnership allegedly carried on for the benefit of the petitioner. Findings of Fact The petitioner isa corporation organized under the laws of California in 1932 under the name of Pernot and Rich, Inc. Its name was changed to Pernot Corporation in 1947. Frederick E. Pernot and L. J. Rich owned between them about 97 per cent of its stock. Pernot held about twice as much as Rich. The petitioner filed its income and excess profits tax returns for the years involved with the collector of internal revenue for the sixth district of California. It is engaged in the manufacture of air conditioning equipment. In 1939 an assignment was made by the petitioner for the benefit of its creditors. Its business was operated by *111 the assignee, Charles R. Warfel. The total amount of unsecured debts owed by the petitioner was about $52,500 of which $7,500 was due to general trade creditors, about $27,000 to Pernot and about $18,000 to Rich. Pernot was a member of the creditors' committee formed at the time of the assignment. It had only one meeting, immediately after the assignment. The petitioner's business was operated by Warfel from February, 1939 to October, 1939, at an operating loss of $12,960.93. In August, 1939, delinquencies in taxes and payments under the deeds of trust became so much in arrears that Pernot and Rich signed an agreement with a bank which provided that they would pay the taxes and continue the trust as individuals. Thereupon the assignee transferred the title to real estate which the petitioner's plant occupied, to Pernot and Rich operating as "Pernot and Rich Properties" and thereafter they made due accounting of their ownership thereof in their individual income tax returns. At that time they decided that they would retain the property individually and let it have no further connection with the petitioner corporation. They charged a monthly rental of $200 or $250 for the use of the *112 real estate by the petitioner. The real estate was never returned to the petitioner. In October, 1939, the assignee decided that it was to the best interests of the general creditors to cease operation and to liquidate. Thereupon Pernot and Rich offered to forego their aggregate claim of approximately $45,000 and to purchase from the assignee all of the petitioner's assets except the real estate, in consideration of their paying the expenses of the receivership and a dividend of 33 1/3 per cent to the trade creditors. The offer was accepted, a bill of sale was delivered by the assignee to Rich and Pernot and the business thereupon was operated by Rich and Pernot as a joint venture. The plan tendered by Rich and Pernot, adopted by the assignee and accepted by the trade creditors, resulted in a greater recovery by the trade creditors than through liquidation. The letter of the assignee to the trade creditors dated October 19, 1939, contained the following statements: "After considerable negotiation, at the close of the season in lieu of liquidation, Messrs. Pernot and Rich made an offer to purchase the assets through payment of 33 1/3 cents net to the unsecured creditors. Compared *113 with the possible return under liquidation, this was an excellent offer because it is doubtful that creditors would have received as much as 18 cents on the dollar through liquidation at any time from the date of the assignment to the present. Except for the absence of one member of the creditors' committee from the city, the offer had the unanimous approval of the entire committee and consequently, a sale on that basis was consummated yesterday, making possible payment of one-third of your claim, as per the check enclosed. "While the subject corporation is devoid of assets, nevertheless the assignors' attorney requested that the first and final dividend check be endorsed so that acceptance would constitute a release, either to facilitate dissolution of the corporation, or to permit the possible use of the corporation in the future. Your assignee could see no objection to that request so the enclosed check has been endorsed accordingly. "Messrs. Pernot and Rich have informed your assignee that if, through their operation of this business, they are able to accumulate sufficient monies, they intend, when the funds are available, to pay each and every creditor in full. Both gentlemen *114 requested that this information be given to the creditors in the assignee's closing letter." The sale of the assets by the assignee to Rich and Pernot left the petitioner with no assets whatever. From October, 1939 to 1944, Rich and Pernot sold goods to the petitioner. On its books and in its income tax return the amounts paid for such goods were shown as cost of goods sold and on the books and in the returns the rental of the machinery and equipment leased from Rich and Pernot was treated as an expense. The partnership of Rich and Pernot charged off the depreciation thereon in its income tax returns. It reported the sales of goods to the petitioner and charged off certain expense items including expenses and fees paid for the collection of accounts receivable, bad debts and miscellaneous expenses. It also reported miscellaneous income such as bad debts recovered and interest earned. The petitioner purchased inventory from Rich and Pernot when needed to fill a sale that had been made. The assets of Rich and Pernot, as shown on the balance sheets attached to its income tax returns for the years from 1939 to 1943, inclusive, include cash in bank, amounts due from the petitioner, *115 trade accounts receivable, consigned accounts receivable, accrued rents receivable, inventories of raw materials, fabricated parts, "commercial items" and finished units, machinery and equipment, tools and dies, automobiles and trucks, furniture and fixtures, engineering equipment and "drawings and data." In the liabilities of Rich and Pernot were included notes payable secured by inventory and loans made by Pernot and Rich to the partnership. During the period from October, 1939, to the year 1944, Pernot and Rich, individually and as members of the partnership, owned the assets purchased by the assignee. They so held such assets as absolute owners and conducted their business by means of the use of such property. In view of the fact that Pernot and Rich had advanced the money, it appeared to them to be safer to keep the property out of the corporation until the statute of limitations had "elapsed"on the remainder still owing to the general trade creditors. When they took title to the assets they intended, if necessary, to defend against any creditors who claimed that the assets belonged to the corporation, on the ground that they were the assets of the partnership Rich and Pernot *116 and not of the corporation. In 1944, the petitioner reacquired from the partnership its former machinery, equipment and inventories. During the period from October, 1939 to 1944, separate Federal and State income tax returns were filed by the petitioner, by the partnership of Rich and Pernot, by Pernot and Rich Properties and by Pernot and Rich, individually. In the petitioner's amended excess profits tax return for the fiscal year ending October 31, 1943, it listed on its balance sheet depreciated assets of $323.50 at the beginning, and of $2,150.04 at the end of the year. The Commissioner disallowed the petitioner's claim for net operating losses and carry-over from the "Rich-Pernot Trust" with the following explanation: "In your claim for refund for the taxable year ended October 31, 1943 you claimed an additional net operating loss deduction, representing net operating losses of 'Rich-Pernot Trust' for the calendar years 1940 and 1941. Your contentions in this respect are denied. It is held that the operating losses of 'Rich-Pernot Trust' for the calendar years 1940 and 1941 may not be used in computing your net operating losses for your fiscal years ended October 31, 1941 and *117 October 31, 1942. "It is held further that the corrected operating loss carry-over from your taxable year ended October 31, 1941 is not in excess of $1,836.97, which amount has been allowed as a deduction in computing your income tax liability for your taxable year ended October 31, 1943; and that you do not have any operating loss carry-over allowable as a deduction from your gross income for your taxable year ended October 31, 1944. "It is also held that the operating losses of 'Rich-Pernot Trust' claimed as deductions on your income tax returns for the fiscal years ended October 31, 1943 and October 31, 1944 in amounts of $1,908.54 and $1,680.61, respectively, are unallowable deductions from your gross income." Opinion VAN FOSSAN, Judge: The issue, simply stated, is whether or not the petitioner corporation may secure the advantage of operating and carry-over losses sustained by the partnership. The petitioner's theory is that the partnership was merely an instrumentality used to hold the title to property which in reality belonged to the petitioner. The respondent contends that the partnership conducted its business as a wholly separate entity and held and operated the *118 property as its legal and equitable owner. The record supports the respondent's position. It is pertinent to recount the facts and circumstances surrounding the operation of the business during the critical years. In early 1939 the petitioner made an assignment for the benefit of its creditors. The assignee operated the business until October, 1939, when he decided that it was to the best interest of the creditors to cease operations and to liquidate. Pernot and Rich, the petitioner's largest creditors, offered to pay a certain amount for the plant, equipment and personal property of the petitioner in order to effect a settlement with the "trade creditors" thereby assuring the continuity of the venture in some form. They were practically the sole stockholders of the petitioner and it was immaterial precisely how the enterprise would continue but they chose the partnership form. Pernot and Rich had numerous cogent and persuasive reasons for retaining the assets and operating the business as a partnership. They avoided all the liabilities to which the petitioner might be subject. They were relieved from any possible attack by former creditors. They preserved their personal ownership *119 of the plant, equipment and all other physical assets needed to produce the air conditioning equipment which they were manufacturing. They might "return" the property to the petitioner, as suggested in the letter of October 19, 1939, to the creditors, but that action and the time of its execution were solely within their own control and discretion. They might never make a transfer if they should elect not to do so. The facts set forth the many business ways in which the partnership was active. Such activities are clearly reflected in its tax returns. In our view, they are amply sufficient to justify the conclusion that the partnership was conducting a business. We note that goods were sold to the petitioner at cost. Evidently the petitioner derived the profit on sales to the public. It is not definitely established in the record whether the partnership or the petitioner accomplished the actual manufacturing process - possibly both contributed - but since Pernot and Rich were the owners of practically all of the petitioner's stock and were also sole members of the partnership, it is immaterial, unless perhaps taxwise, which entity received the profit. In , *120 a somewhat converse picture was presented. There the petitioner sought to have gains on sales of its real estate treated as the gains of its sole stockholder and its corporate existence ignored as merely fictitious. That corporation had been organized as a security device in connection with Florida real estate owned by the sole stockholder. It did a limited amount of business, far less in fact than that done by the partnership before us. The Court there said: "The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. ; . In , *121 this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages." There is no evidence of agency or trusteeship. Even so, as was said in , "The question of agency or not depends on the same legal issues as does the question of identity previously discussed." In other cases involving similar situations, such as the , ; and , it has been held in effect that when a taxpayer voluntarily chooses the form or organization which he considers the most advantageous to him in the conduct of his business, he must accept whatever consequent disadvantages may later appear. So in the case at bar. Although there is some suggestion that the petitioner *122 might later resume its operations and deal with the public as the manufacturer of air conditioning equipment, thus indicating an elimination of the partnership and its activities, nothing in the record shows that, in the years at issue, any such change was made. On the contrary, the control and conduct of the business was lodged in Pernot and Rich as partners and it was so carried on by them. If one were the creature of the other the petitioner corporation was used as the conveient instrumentality of the partnership, rather than conversely, as claimed by the petitioner. Therefore, the petitioner corporation is not entitled to receive the benefit of deduction by reason of the losses sustained by the partnership for the fiscal years ending October 31, 1943 and October 31, 1944. Decision will be entered for the respondent.